12-2943-cv
*SEC v. Bankosky*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————

August Term 2012

(Argued:  April 9, 2013        Decided: May 14, 2013)

Docket No. 12-2943-cv

———————

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

v.

BRENT C. BANKOSKY,

*Defendant-Appellant,*

———————

Before:
WALKER AND CHIN, *Circuit Judges,*
AND RESTANI, *Judge.*[*]

———————

Appeal from a post-judgment order of the United

States District Court for the Southern District of New York

(Baer, *J.*), barring defendant-appellant from acting as an

---

[*]    The Honorable Jane A. Restani, of the United States Court
of International Trade, sitting by designation.

officer or director of a public company for ten years, pursuant to section 21(d)(2) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d)(2).

AFFIRMED.

---

ALLAN A. CAPUTE, Special Counsel to the Solicitor, *for* Michael A. Conley, Deputy General Counsel *and* Jacob H. Stillman, Solicitor, Securities and Exchange Commission, Washington, D.C., *for Plaintiff-Appellee.*

ROBERT G. HEIM, Meyers & Heim LLP, New York, New York, *for Defendant-Appellant.*

---

PER CURIAM:

In this case, the Securities and Exchange Commission (the "SEC") accused defendant-appellant Brent C. Bankosky of engaging in insider trading, in violation of sections 10(b) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78n(e), and SEC Rules 10b-5 and 14e-3. After the entry of a consent judgment, in which Bankosky neither admitted nor denied the allegations in the complaint, the SEC moved for an officer and director

- 2 -

bar pursuant to section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2). Relying on the factors in *SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995), the district court found Bankosky "unfit" to serve as an officer or director of a public company and barred him from acting as one for ten years. Bankosky appeals from the post-judgment opinion and order, arguing that the district court erred in balancing the *Patel* factors. We affirm.

### *BACKGROUND*

The parties stipulated in the consent judgment that the following factual allegations in the complaint are to be deemed as true solely for the purpose of deciding the SEC's motion for an officer and director bar:

From January 2008 until his resignation in May 2011, Bankosky worked for the pharmaceutical company Takeda Pharmaceuticals International, Inc. ("Takeda"), first as a director of Global Licensing and Business Development and then as a senior director. In these positions, Bankosky had access to, and did obtain, material non-public information regarding Takeda's discussions with outside companies about strategic alliances, mergers, and product

- 3 -

acquisitions. Despite a company policy prohibiting trading on such inside information, from 2008 to 2011 Bankosky bought call options in the shares of four companies in advance of anticipated deal announcements between these companies and Takeda. After deals with two of the companies were publicly announced, Bankosky sold the options in those companies and realized profits of $63,000. His option investments in the other two companies netted no gain.

On February 9, 2012, the SEC filed this action below. The consent judgment was entered March 15, 2012, imposing a permanent injunction against further violations, ordering disgorgement of $63,000 plus pre-judgment interest, and imposing a civil penalty of $63,000.

On March 30, 2012, the SEC moved for the district court to bar Bankosky permanently from serving as an officer or director of any company whose shares are registered under the Exchange Act. In support of its motion, the SEC attached excerpts of Bankosky's sworn testimony before the SEC and emails that Bankosky sent while working at Takeda. In the testimony, Bankosky denied

having any knowledge about Takeda's entry into a strategic global alliance with Cell Genesys before the public announcement. But emails referenced in the complaint and attached as exhibits to the SEC's motion demonstrate that Bankosky was aware of the confidential negotiations with Cell Genesys and even worked on the project before it went public.

In a May 21, 2012 opinion and order, the district court evaluated Bankosky's fitness to serve as an officer or director, applying the six factors set out in *SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995). *See SEC v. Bankosky*, No. 12 Civ. 1012, 2012 WL 1849000, at *1-3 (S.D.N.Y. May 21, 2012). In Bankosky's favor, the district court noted that his conduct, though "undeniably serious and not isolated," was not the sort typically considered egregious and the fact that he was not a repeat offender was "particularly relevant." *Id.* at *2. On the other hand, the court made the following findings against him: Bankosky, though not an officer or director, was "acting in a corporate or fiduciary capacity . . . where he and his colleagues were involved in the due diligence and

- 5 -

negotiations for deals with other pharmaceutical companies"; he knowingly engaged in insider trading; his misleading SEC testimony was particularly troubling; he had a personal economic stake in the trades; and, given his continued effort to contest the wrongfulness of his actions, there were no "assurances against future misconduct." *Id.* at *2-3 (quotation omitted). Balancing all of these factors, the court prohibited Bankosky from acting as an officer or director of any public company for ten years. *Id.* at *4.

This appeal followed.

### *DISCUSSION*

### A. *Applicable Law*

The district court has "substantial discretion in deciding whether to impose a bar to employment in a public company." *Patel*, 61 F.3d at 141. Accordingly, we review the district court's issuance of an officer and director bar for abuse of discretion. *See SEC v. Posner*, 16 F.3d 520, 521 (2d Cir. 1994). Under this standard, "we will reverse only if we have 'a definite and firm conviction that the court below committed a clear error of judgment in

the conclusion that it reached upon a weighing of the relevant factors.'" *Anderson v. Beland (In re Am. Express Fin. Advisors Sec. Litig.)*, 672 F.3d 113, 129 (2d Cir. 2011) (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 362 (2d Cir. 2003)).

Section 21(d)(2) of the Exchange Act provides that:

> the court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated section [10(b)] of this title or the rules or regulations thereunder from acting as an officer or director of any issuer that has a class of securities registered pursuant to section [12] of this title or that is required to file reports pursuant to section [15(d)] of this title if the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer.

15 U.S.C. § 78u(d)(2). In *SEC v. Patel*, we identified six non-exclusive factors that were "useful in making the unfitness assessment":

> (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or

> position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur.

*Patel*, 61 F.3d at 141 (quotation omitted) (citing Jayne W. Barnard, *When Is a Corporate Executive "Substantially Unfit to Serve"?*, 70 N.C. L. Rev. 1489, 1492-93 (1992)).  We clarified, however, that these are not "the only factors that may be taken into account" and that it was not "necessary to apply all these factors in every case."  *Id.*

Patel interpreted an earlier version of section 21(d)(2), which permitted a ban only "'if the person's conduct demonstrates *substantial unfitness* to serve as an officer or director.'"  *Id.* at 140-41 (emphasis added) (quoting 15 U.S.C. § 78u(d)(2) (1990)).  In 2002, Congress replaced "substantial unfitness" with simply "unfitness."  *See* Sarbanes-Oxley Act of 2002 § 305(a), Pub. L. No. 107-204, 116 Stat. 745, 778-79 (2002) (amending 15 U.S.C. § 78u(d)(2)).  Although textually this change is ambiguous, the legislative history demonstrates that Congress's intent was to lower the threshold of misconduct for which courts

may impose director and officer bans. *See* S. Rep. No. 107-205, at 27 (2002), *available at* 2002 WL 1443523 (explaining that standard was changed to "unfitness" because "'substantial unfitness' standard . . . [was] inordinately high, causing courts to refrain from imposing bars even in cases of egregious misconduct"); *see also SEC v. Levine*, 517 F. Supp. 2d 121, 144-45 (D.D.C. 2007), *aff'd on other grounds*, 279 F. App'x 6 (D.C. Cir. 2008); Jayne W. Barnard, *Rule 10b-5 and the "Unfitness" Question*, 47 Ariz. L. Rev. 9, 20 (2005); Jon Carlson, Note, *Securities Fraud, Officer and Director Bars, and the "Unfitness" Inquiry After Sarbanes-Oxley*, 14 Fordham J. Corp. & Fin. L. 679, 693-94 (2009). On appeal, although it argues for affirming the ten-year ban, the SEC contends that the *Patel* factors are "no longer applicable" because of the change in the statute.

## B. *Application*

We hold that the district court did not err in relying on the six *Patel* factors in this case. The 2002 Amendment, by lowering the threshold of misconduct required to impose the officer and director bar, did not undermine

the usefulness of the *Patel* factors, which indicate where evidence of unfitness might be found in a defendant's misconduct. Whatever the contours of the new standard, "unfitness" is clearly a lower hurdle than "substantial unfitness." *See* S. Rep. No. 107-205, at 27 (2002). It necessarily follows that a person who is "substantially unfit" under the *Patel* analysis is also "unfit" under the revised statute. Thus, the *Patel* factors are just as relevant to determining "unfitness" as they were to determining "substantial unfitness." *See SEC v. iShopNoMarkup.com, Inc.*, No. 04-cv-4057, 2012 WL 716928, at *3 n.2 (E.D.N.Y. Mar. 3, 2012); *SEC v. Miller*, 744 F. Supp. 2d 1325, 1347 (N.D. Ga. 2010); *SEC v. DiBella*, No. 3:04-cv-1342, 2008 WL 6965807, at *9 n.12 (D. Conn. Mar. 13, 2008). Moreover, the *Patel* factors are neither mandatory nor exclusive; a district court may determine that some of those factors are inapplicable in a particular case and it may take other relevant factors into account as it exercises its "substantial discretion" in deciding whether to impose the bar and, if so, the duration, so long as any bar imposed is accompanied with some indication of the

factual support for each factor that is relied upon.
*Patel*, 61 F.3d at 141.

The six *Patel* factors were derived from a law review article by Professor Jayne W. Barnard, who, subsequent to the 2002 Amendment, proposed a new set of nine, non-exhaustive factors to guide the determination of "unfitness":

> (1) the nature and complexity of the scheme; (2) the defendant's role in the scheme; (3) the use of corporate resources in executing the scheme; (4) the defendant's financial gain (or loss avoidance) from the scheme; (5) the loss to investors and others as a result of the scheme; (6) whether the scheme represents an isolated occurrence or a pattern of misconduct; (7) the defendant's use of stealth and concealment; (8) the defendant's history of business and related misconduct; and (9) the defendant's acknowledgement of wrongdoing and the credibility of his contrition.

Barnard, *Rule 10b-5 and the "Unfitness" Question*, 47 Ariz. L. Rev. at 46; *see also Patel*, 61 F.3d at 141 (citing Barnard, *When Is a Corporate Executive "Substantially Unfit to Serve"?*, 70 N.C. L. Rev. at 1492-93). These nine factors have been considered in a handful of cases in conjunction with the six *Patel* factors. *See, e.g.*, *Miller*, 744 F. Supp. 2d at 1347-48; *Levine*, 517 F. Supp. 2d at 145. For the most part, however, district courts in this and other circuits have continued to

rely on the *Patel* factors for guidance. *See, e.g.*, *SEC v. Wilde*, No. SACV 11-0315, 2012 WL 6621747, at *17 (C.D. Cal. Dec. 17, 2012); *SEC v. Metcalf*, No. 11 Civ. 493, 2012 WL 5519358, at *4 (S.D.N.Y. Nov. 13, 2012).

The SEC, in its brief, opposed the adoption of Professor Barnard's nine-factor test and, at oral argument, indicated its preference for the set of factors cited in *Steadman v. SEC*, 603 F.2d 1126 (5th Cir. 1979), which are used to decide the propriety of injunctive relief in light of a defendant's past violations of the securities laws:

> [1] the egregiousness of the defendant's actions, [2] the isolated or recurrent nature of the infraction, [3] the degree of scienter involved, [4] the sincerity of the defendant's assurances against future violations, [5] the defendant's recognition of the wrongful nature of his conduct, and [6] the likelihood that the defendant's occupation will present opportunities for future violations.

*Steadman*, 603 F.2d at 1140 (citing *SEC v. Blatt*, 583 F.2d 1325, 1334 n.29 (5th Cir. 1978)). But we also read the *Steadman* factors, which closely resemble the *Patel* factors, as suggestive and non-exclusive indicators of unfitness to serve as a fiduciary.

- 12 -

Ultimately, we find no "clear error of judgment in the conclusion that [the district court] reached upon a weighing of the relevant factors." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d at 129 (quotation omitted). Apart from the district court's findings, we are also troubled by the fact that Bankosky was buying call options in shares of Millennium Pharmaceuticals, Inc., a company that his employer was in negotiations to acquire. The call option purchases could have increased trading demand for the target company's shares and share price, making the acquisition bid more costly or even pricing a deal beyond reach. This conduct betrays an impulse to place self-interest ahead of his employer's and its shareholders' interests and further demonstrates unfitness to serve as a corporate fiduciary. *Cf. McCrae Assoc., LLC v. Universal Capital Mgmt., Inc.*, 746 F. Supp. 2d 389, 400 (D. Conn. 2010) ("The duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally.") (quotation and alteration omitted). In light

of the circumstances presented, the district court reasonably determined that a ten-year ban was warranted. Hence, it did not abuse its discretion.

## *CONCLUSION*

For the foregoing reasons, the order of the district court is AFFIRMED.